196 N.J. Super. 96 (1984)
481 A.2d 596
JOHN B. DIETZEMAN, PLAINTIFF,
v.
JOHN E. PETERSON AND REBECCA C. HOWE, DEFENDANTS AND THIRD PARTY PLAINTIFFS,
v.
WALTER CLEARY, III, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided January 23, 1984.
*97 Gerald M. Compeau, Jr. for plaintiff.
David S. Cramp for defendants Peterson and Howe.
W. Stephen Leary for third party defendant Cleary.
MacKENZIE, J.S.C.
This opinion considers the interplay between and the reconciliation of Evid.R. 56(2) and Evid.R. 63(12). The specific issue is whether a non-treating physician may be allowed to testify before a jury concerning the history of past and present complaints made to him by the injured plaintiff during the course of a physical examination. This is a bodily injury, automobile negligence action.
*98 On January 24, 1981 plaintiff was a passenger in an automobile owned by Rebecca C. Howe and driven by John E. Peterson, which collided with a stationary pick-up truck owned by Walter Cleary, III. The truck had been disabled and left unattended by Mr. Cleary on the shoulder of Rt. 10 in Parsippany, New Jersey. The impact caused serious head and facial injuries to plaintiff. While hospitalized, plaintiff was treated for a concussion by a neurologist and for a fractured mandible by an orthopedic surgeon.
This medical treatment was successful; plaintiff was able to make a complete recovery from the concussion and fracture. About a month or so after the accident, however, the plaintiff began to feel occasional, mild lower back pain. According to his testimony, the pain in his back began to increase in severity and frequency.
On April 8, 1982, at the direction of his father's automobile insurance carrier[1], plaintiff visited the office of Dr. Arthur Tiger. Dr. Tiger is an orthopedic surgeon. The consultation with Dr. Tiger was not for the purpose of treatment, but rather for a determination as to whether the P.I.P. carrier would continue to accept the obligation to provide future medical treatment. Dr. Tiger first obtained a history from the plaintiff, examined him, and also administered several diagnostic tests. The findings of the examination and the tests were somewhat ambiguous, showing no conclusive indication of pathology. The orthopod's initial medical impression was of a soft tissue injury to the lower back.
But, because he was concerned about the continued existence of back complaints some 14 months after the trauma, Dr. Tiger ordered a Computerized Axial Tomography test (CAT Scan). Upon reviewing the results of the CAT Scan, Dr. Tiger reached *99 a diagnosis that the plaintiff's back problems were the result of a central herniation at the L-5, S-1 disc. X-rays later disclosed a narrowing of the intervertebral space at L-5, S-1. Based on the history given by plaintiff, Dr. Tiger related the disc injury causally to the vehicular accident. A report which includes his observations, plaintiff's complaints and his findings was sent to the P.I.P. carrier and made available to counsel for the parties to this action. A later visit to that same orthopod revealed additional problems regarding complaints of pain radiating down the legs.
As part of the discovery process, plaintiff was also examined by Dr. Barry Levine, another orthopedic surgeon, at the request of the attorney for Mr. Cleary. This examining physician did not concur with the previous diagnosis of a herniated disc. Nor did this doctor agree that plaintiff's complaints were consistent with the symptomology of a central herniated disc. His examination of the CAT Scan disclosed only a gentle bugling of the disc L-5, S-1. In addition, the absence of significant lower back pain a short time after the motor vehicle incident led this orthopod to deny causal relationship between the organic changes and the trauma.
At trial, plaintiff sought to elicit opinion testimony from Dr. Tiger[2] of a disc herniation and of a causal relationship to the accident of January 24, 1981. Defendants objected as hearsay to the admission of any statements made by plaintiff to a non-treating physician. Plaintiff contended that Evid.R. 56(2) permits this testimony.
A hearing out of the presence of the jury was conducted. Evid.R. 8(1). Dr. Tiger testified in the absence of the jury that plaintiff had stated the back pain was felt immediately after the accident. This discomfort as explained to the physician was *100 supposedly not a matter of immediate concern to the plaintiff due to his experiencing greater pain in other parts of his body, particularly in his lower jaw, which had been wired to the upper jaw. The plaintiff had further relayed that the dull, aching back pain had gradually increased in severity over time and had become accompanied occasionally by sharp, stabbing pain on the left side. As a result, plaintiff told the doctor that he had been unable to continue working as a roofer.
Defendants objected to the admissibility of these statements, contending that they were not made to a treating physician. Evid.R. 63(12) provides:
A statement is admissible if it was made in good faith and it ... (b) described previous symptoms, pain or physical sensations to a physician consulted for purposes of treatment and relevant to an issue of declarant's bodily condition, or (c) described to a physician consulted for purposes of treatment the inception, general character of the cause or external source of symptoms, pain or physical sensation where such a description was relevant to diagnosis and treatment.[3]
Defendants contended that the plaintiff was probably more interested in obtaining a favorable medical opinion to support his claims either against the P.I.P. carrier or against the tort feasors at trial than he was in alleviating whatever back condition existed. These self-serving statements were said by defendants to be inherently unreliable. Defendants maintained that these statements were not competent as substantive evidence of the facts stated. See Evid.R. 63(12); Accord, Tramutola v. Bortone, 118 N.J. Super. 503, 514 (App.Div. 1972), modified on other grounds, 63 N.J. 9 (1973); Consolidated Traction Co., v. Lambertson, 60 N.J.L. 452, 454 (E & A 1897); Sandford v. Chanaz Co., 117 N.J.L. 485, 488 (E & A 1937).
Plaintiff's statements were clearly hearsay. On the other hand, Evid.R. 56(2), the rule dealing with opinion evidence, reads as follows:

*101 A witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or make known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Plaintiff argued that the physician could not make a proper diagnosis without relying on such statements. In this instance, Dr. Tiger's opinion of disc herniation was based primarily upon his interpretation of the objective, diagnostic tests which were in evidence at trial. He also considered statements made to him by the plaintiff. Plaintiff's statements, the Court determined, were made for the purpose of leading that physician to form an opinion as to a back injury and its causation which in turn would be relied upon by the P.I.P. carrier in deciding whether additional medical treatment would be needed.
An expert may use hearsay to confirm an opinion which had been reached by independent means. See, for example, the case of State v. Alexander, 7 N.J. 585, 596 (1951), cert. den. 343 U.S. 908, 96 L.Ed. 1326, 72 S.Ct. 638 (1951), where a medical examiner, while testifying regarding a wound made by a sharp cutting instrument, indicated that he had relied in his diagnosis in part on tests made by a laboratory technician and on photographs which were not in evidence. In that case, the Supreme Court held that since the expert witness testified that he had merely used the hearsay to confirm an opinion already arrived at, the use of hearsay was not error. See also, State v. Stevens, 136 N.J. Super. 262 (App.Div. 1975).
The intent of the opinion rule therefore is to permit an expert opinion to be corroborated, confirmed or bolstered by hearsay, but not to rest exclusively or primarily upon it. Thus, plaintiff's statements become admissible not as proof of the facts stated, but only so that the jury may evaluate the experts' opinion of disc herniation. See generally, Rheingold, The Basis *102 of Medical Testimony, 15 Vand.L.Rev. 373 (1952). Plaintiff's statements then are not substantive evidence. In this manner two rules of evidence which appear to conflict with one another can be read in conjunction with one another to carry out the intent of our Rulemakers.
A limiting instruction to the jury on the purpose and use of the hearsay must be given. Evid.R. 6.
NOTES
[1] All plaintiff's hospital and medical expenses were paid or were payable under the provision of the personal insurance protection (P.I.P.) clause of his father's automobile insurance policy. See N.J.S.A. 39:6A-13.
[2] Not raised at trial and therefore not considered was the legal propriety of calling as one's expert witness a physician who had been originally retained by another entity, the P.I.P. carrier, which was not a party to this litigation. Dr. Tiger did not object to providing expert testimony on behalf of plaintiff.
[3] Not only is the hearsay testimony of a treating physician admissible substantively, but so also are the included statements of the patient which are contained in his office records. Cf. Gunter v. Fischer Scientific American, 193 N.J. Super. 688 (App.Div. 1984).