206 N.J. Super. 349 (1985)
502 A.2d 1154
PAUL SKIBINSKI, SR. AND MARIE SKIBINSKI, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
JOSEPH A. SMITH, DEFENDANT, AND CARMELO RENDA AND CRIS TECH ASSOCIATES, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1985.
Decided December 23, 1985.
*351 Before Judges BRODY, GAYNOR and BAIME.
Clifford N. Kuhn, Jr., argued the cause for appellants (Justin, Gast & Kuhn, attorneys; Michael R. Justin, on the brief).
Michael John Stone argued the cause for respondents (Hoagland, Longo, Oropollo & Moran, attorneys; Donald D. Davidson, of counsel; Daniel H. Green, on the brief).
The opinion of the Court was delivered by BRODY, J.A.D.
This is an automobile negligence action tried to a jury on damages issues only. Plaintiff Paul Skibinski, Sr., (plaintiff) claimed to have suffered severe injuries to the cervical and lumbosacral portions of his back. His wife sued per quod. The jury awarded plaintiff $65,000 and his wife $15,000. Plaintiffs[1] contend that the trial judge erroneously excluded the opinion testimony of their medical witnesses that plaintiff was totally disabled by the accident and therefore unemployable. The trial judge excluded the evidence because the experts failed to include that opinion in their reports that plaintiffs had furnished defendants during discovery.[2] We reverse.
In June 1981, plaintiff, then 53 years old, had stopped his automobile at a traffic light when it was struck from the rear. *352 He did not then appear to be injured from the impact, but evidence at trial supports plaintiff's claim that the accident produced disabling injuries to his back. At the time of the accident plaintiff had been working for the same employer over 18 years as a tool and cutter grinder. As his disability worsened he missed increasingly more time from work. His final day on the job was September 8, 1982, almost two years before trial. He has not worked since.
The issues at trial were the extent of plaintiff's injuries and whether they were attributable to the 1981 automobile accident or to other accidents that had occurred years earlier. An important component of his damages, which the trial judge prevented plaintiff from proving, was his alleged inability to work for the remainder of his work-life.
Plaintiff offered the testimony of two neurologists to prove that he was totally disabled. One neurologist had concluded in his report that the 1981 accident aggravated plaintiff's prior back injuries causing "difficulty with his both legs" and a "depressive neurosis." His report characterized plaintiff's condition as a permanent disability. The other neurologist made a similar diagnosis in her report wherein she noted that "at the end of 2 years after the accident Mr. Skibinski still remains in distress indicative of some permanent disability." Neither report contained an opinion that plaintiff's disability was total leaving him permanently unemployable. In excluding the proffered testimony the trial judge stated that an expert's testimony must be confined to the opinions expressed in the expert's report provided in discovery.
A distinction must be made between answers to interrogatories and an expert's report furnished in response to a request contained in interrogatories. R. 4:17-8(a) provides in part, "Answers to interrogatories may be used to the same extent as provided by R. 4:16-1(a) and R. 4:16-1(b) for the use of the deposition of a party." R. 4:16-1(a) permits any deposition to be used by any party for "any ... purpose permitted by the *353 Rules of Evidence." R. 4:16-1(b) permits the deposition of a party to be used by an adverse party for "any purpose against the deponent...." [Emphasis added.]
An answer to an interrogatory is a statement by a party and therefore admissible at trial as an admission. Evid.R. 63(7). A written admission provided in discovery may also be used by an adverse party to establish "conclusively" any fact admitted. See R. 4:22-2 (Requests for Admissions). A party therefore may not introduce at trial evidence of facts and opinions that are inconsistent with the facts and opinions stated in his answers to interrogatories. Although this limiting effect of answers to interrogatories is not expressly stated in the Rules of Court, it is implicitly acknowledged in R. 4:17-7, the limitation on the right to amend answers to interrogatories. There it is provided, "In no case shall amendments be allowed 1) at trial where it appears that the evidence sought to be introduced was known to the party seeking such leave, more than 10 days prior to trial...." [Emphasis added.]
The report of an expert is also a statement. However, unlike an answer to an interrogatory it is not a statement of a party and therefore cannot be treated as an admission simply because a party furnished it in discovery. Confusion occurs because, as a matter of convenience, R. 4:10-2(d)(1) permits a party to require another party to furnish his expert's report "through interrogatories" rather than through the more cumbersome procedure of production and copying of documents pursuant to R. 4:18-1. Statements in an expert's report that are inconsistent with his testimony are admissible in cross-examining the expert because inconsistent statements of any witness are admissible. Evid.R. 63(1)(a). But just as the testimony of a witness may not be limited to the content of his prior statement, the testimony of an expert may not be limited to the content of his report simply because the report had been furnished in discovery.
A party is thus not ordinarily bound at trial by a witness's statement furnished in discovery. However, because *354 a party is bound by his own admissions he may become bound by the statements of others if the party expressly adopts those statements as his own. See Evid.R. 63(8) (Authorized and Adoptive Admissions). For instance, if a party answers an interrogatory by stating "See my expert's report," the contents of the report that are responsive to the interrogatory thereby become statements of that party and constitute binding discovery admissions. In that event, the expert's testimony will be limited to the contents of his report  not because the report had been furnished in discovery, but because by his answer to an interrogatory the party adopted the contents of the report as his own admissions. Sallo v. Sabatino, 146 N.J. Super. 416, 418 (App.Div. 1976), certif. den., 75 N.J. 24 (1977).
A party seeking to limit the scope of his adversary's expert testimony can do more, however, than hope for a chance adoptive admission in answer to an interrogatory. R. 4:10-2(d)(1) permits a party to require, through interrogatories, any other party to "state the subject matter on which [his] expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion...." A party offering an expert witness must answer such interrogatories when they are propounded. The answers are admissions and may therefore be used to limit the expert's testimony.
Here, the interrogatories propounded by defendants followed the "Uniform Interrogatories: Personal Injury: Superior and County Court," appearing as Form A in Appendix II to the Rules of Court. That form merely contains a request for a copy of an expert's report and therefore does not produce admissions that can be used to limit the expert's testimony at trial. The trial judge therefore erred in mechanically limiting the doctors' testimony to the contents of their reports.
We do not mean, of course, to substitute the mechanical application of one rule of exclusion with the mechanical application of another. Imposition of the sanction of exclusion of *355 evidence under R. 4:22-2 (Requests for Admissions), under R. 4:17-4(e) and R. 4:23-5(b) (failure to furnish or update expert's report), or because of the limiting effect of an interrogatory answer is always subject to the sound discretion of the trial judge.
But the application of the sanction is consigned to the sound discretion of the judge, subject only to the rule that the sanction visited upon the party must be just and reasonable. [Citation omitted.] The factors which would "strongly urge" the trial judge, in the exercise of his discretion, to suspend the imposition of sanctions, are (1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence. [Citations omitted.] This accords with the overriding objective of giving the defaulting party his day in court, with due regard, however, to protecting the opposing party from the effects of surprise or other prejudicial factors. Reilly v. Spiegelhalter, 100 N.J. Super. 276, 284 (App.Div. 1968). [Westphal v. Guarino, 163 N.J. Super. 139, 145-146 (App.Div. 1978), aff'd o.b., 78 N.J. 308 (1978)]
In the present case, even if the sanction were available it should not have been imposed because there was ample evidence that defendants were aware well in advance of trial that plaintiffs would claim permanent disability rendering plaintiff unemployable. Indeed defendants knew that the conditions which the doctors described in their reports as "permanent" had led to plaintiff's forced retirement almost two years before trial.
Reversed and remanded for a new trial.
NOTES
[1] The wife's name was omitted from the notice of appeal. The parties ignored this oversight and so shall we.
[2] Defendants' attorneys did not claim below that the experts had given plaintiffs' attorneys later written or oral reports with which they had not been furnished. Failure to furnish an expert's updated report would be a basis for excluding the expert's testimony that would go beyond the furnished report. R. 4:23-5(b). See Clark v. Fog Contracting Co., 125 N.J. Super. 159, 161-162 (App.Div. 1973), certif. den., 64 N.J. 319 (1973).